Good morning, Your Honors, and may it please the Court. My name is Tyler O'Brien, and I was appointed by this Court to represent the Plaintiff Appellant, Mr. Danny Bell. I'd like to reserve three minutes of my time for rebuttal. Your Honors, the District Court's order dismissing Mr. Bell's pro se civil rights complaint without leave to amend was erroneous and should be reversed. I'd like to discuss three main points here today. First, dismissing Mr. Bell's pro se civil rights complaint without leave to amend for the purported failure to plead administrative exhaustion directly contravenes Supreme Court precedents, and this Court can and should reverse on that basis alone. Second, this Court should not consider any of the alleged alternative grounds for affirming, all of which were raised for the first time in this case. This Court should still reverse because none of the alleged alternative grounds supports denying Mr. Bell even one opportunity to amend his complaint to cure any deficiencies. Now, at the threshold, it is undisputed that the District Court dismissed Mr. Bell's pro se civil rights complaint for the purported failure to plead administrative exhaustion. However, it is also undisputed that controlling Supreme Court precedent holds that Mr. Bell was not required to do so. In fact, in Jones v. Bach in 2007, the Supreme Court held that the failure to exhaust administrative remedies is an affirmative defense that the defendant has the burden to raise. Has the other side conceded on this point? No, Your Honor. They concede that the do argue that Mr. Bell should have been required to undergo to exhaust certain state court remedies, but even if Mr. Bell, but that does not apply because Mr. Bell was not required to exhaust remedies of any sort, neither administrative nor state statutory remedies. And why is that? Your Honor, to bring in Section 1983 claim, Congress has held, has passed the law saying that prisoners need to exhaust certain administrative remedies, but that does not apply here because that is an affirmative defense and Mr. Bell was not required to plead. So did I, okay, it's an affirmative defense. Did the state raise it as an affirmative defense? No, Your Honor. Okay, so you're, the problem is it's been waived. The state waived it by not raising it. No, Your Honor. The problem is that the district court required Mr. Bell to plead that he had exhausted. I see. Is this one of those cases where the state didn't really answer before the district court dealt with it? Yes, Your Honor. So the state didn't waive it because the state hadn't even said anything yet, but you're saying that the district court shouldn't have held it affirmative defenses for the, precisely, Your Honor, for the state. Okay. I see. So if we were to send it back, would the state then have the option of arguing that there's not non-exhaustion? Yes, Your Honor. Yeah. So the state's not fully waived it. It's just that the district court was premature. Precisely, Your Honor. Yeah. This case arose, Mr. Bell filed his pro se civil 2016. Three years later, the district court conducted the required PLRA screening, and at that stage, the district court— Did Mr. Bell actually, actually exhaust his state remedies? Yes, Your Honor. In fact, he did. So the district court's order is erroneous on two fronts in that regard. First, Mr. Bell was not required to plead that he had exhausted administrative remedies, but even if he were, contra factually, he did do so. Mr. Bell sought— He did so within the prison system, it appears. He did so in two ways, Your Honor. He did so within the prison system, and he did so by contacting the State Department of Justice to initiate— So the magistrate suggested that he had to go to state court, and that was an additional— Yes, Your Honor. Additional step he didn't take. Yes, Your Honor, and that is another error contained in the magistrate judge's report and recommendation. The magistrate judge recommended holding, and the district court, in fact, held that Mr. Bell was required to contact the convicting court to correct his sentence, but the district— the magistrate judge's R&R does not support that with any citation to statutory law, and we are unaware of any provision of California law whereby an individual can commence administrative adjudication against a court to correct their record. Before your time runs, I want to make sure you have a chance to address the Heck problem. Yes, thank you, Your Honor. This panel has requested that counsel address the potential application of the Heck v. Humphrey for two separate reasons. First, the so-called Heck bar applies only if success in a 1983 action would, quote, necessarily invalidate— No, necessarily imply the invalidity of. Your Honor, in a follow-on case to Heck v. Humphrey, Wilkinson v. Dotson, 544 U.S. 74, the Supreme Court has saying, necessarily demonstrate the invalidity of confinement for its duration. Here, Mr. Bell is not doing that. Mr. Bell is not attacking his conviction or his sentence. But I think it's invalidate the conviction or the sentence. Isn't that right? Yes, Your Honor. That's the test. Yeah. So I think he's not, after the invalidating the conviction under which he's been imprisoned here, but he's asking to invalidate the sentence because the sentence is too long. No, Your Honor. He's not asking to invalidate either the conviction or the sentence. Mr. Bell is pursuing this 1983 action, and if he is successful, the district court would order the State Department of Justice to correct its records about which felonies are on Mr. Bell's criminal history. That's— And then what would happen? Hypothetically, Mr. Bell could pursue a future action, but whether or not, if in the future action, Mr. Bell could invalidate a sentence is not before the court today. Mr. Bell— I don't think that's how the Hecht inquiry works. I mean, I think his sentence was based on, these—him having a certain offenses. And if he was able to get the corrections he wants, then his sentence would be invalid, I think. It would have—I mean, you're saying, well, we don't know if—I guess maybe he could just decide not to ask to have a sentence, but that's why the way it's been characterized is it would necessarily imply that the sentence was invalid. I mean, I don't think Hecht turns on whether he actually asked to have, and it's hard for me to see how it wouldn't necessarily imply, because his sentence would have been based on the wrong information, the wrong prior offenses. That's the struggle. Let me add to Judge Van Dyck's question, this comment. If there's no there there, that is, if there's no consequence to his sentence, then why would we spend all of the time in a 1983 suit trying to get the record corrected? In other words, if there's no harm, if it's just a matter of getting a ministerial correction, why would we take the district court's time to go through all of this exercise to correct a record if it has no consequence, real-world consequence for your client? Your Honor, Mr. Bell is bringing this action to redress the stigma and reputational harm that he has inflicted on him because of the erroneous records maintained by the State Department of Justice. If he is successful— He's only asking for—is he asking for damages, then? He is not asking for damages. He is asking for equitable relief to require the State Department of Justice to correct its records to show that he did not, in fact, suffer the 1989 conviction. So Mr. Bell is not asking that the three-strikes sentence be struck? That is correct, Your Honor. Why didn't he pursue this as habeas relief? I mean, that's kind of, heck, that's kind of the whole background, is they didn't want, sort of, they wanted to push things in different routes. And in theory, if you want to correct your record, you pursue habeas relief, usually. Mr. Bell may be entitled to do so, but he is also entitled to pursue this action where he is seeking to redress the stigma-based and reputational harm inflicted on him because of the erroneous records, whether or not he— That's kind of what, heck, that's what HECT is about, is to say, you know, if you've got that habeas route to do it, you need to do it in habeas. And so I don't know that you're right, that you, it sounds like you're saying, well, he can do it either way. But the problem, I think, HECT was to say, no, if you have the habeas route, you need to pursue it that way. And it kind of came up with this rule that if it would mess up your, if it would undermine the basis of your conviction or, in this case, the basis of your sentence, you could go ahead and— I think the Court is mistaken here in that there are two separate forms of relief that Mr. Bell could potentially pursue. One is correcting the record held by the State Department of Justice, and the second is seeking to invalidate his conviction or his sentence. So I think, yeah, you're trying to slice it up that way and basically say, if the relief you're asking for is not actually going so far as to invalidate your conviction, but it would just imply that your conviction is invalid, then that's not a HECT problem. But that's not the way I don't think HECT works. Like, you can't plead around a HECT problem, I don't think, the way you're saying. I, by, I would cite the Court to the Wilkinson v. Dodson case, where the Court summarized its HECT test as, quote, necessarily demonstrate the— Roberts. But, Counsel, your client, at least, at least at the Department of Corrections Rehabilitation Office of Appeals and the prior one issued out of Vacaville, the State certainly thought that your client was asking to have his sentence reduced. That's the way that those read, that he has been adversely affected due to incorrect information, and the error caused an adverse ruling in his present case, which caused a heightened sentencing issue. So the State certainly thought that he was asking. Was he just asking just for a correction because it's sort of intellectually honest, and he's not asking to have his sentence reduced? Yes, Your Honor. He's pursuing this— Well, I need to be clear, Counsel, but you're not saying that he would never ask for —you're just saying he's not asking to have his sentence reduced in this action, but you're not promising that he'll never ask to have his sentencing reduced if he gets the relief he's asking for here. Of course, Your Honor. I can't promise what Mr. Bell will or not do with this. Yeah. Now, I think I know why he's not doing habeas. I think he's time-barred. That is to say, this sentence was — the conviction sentence was 1997, and he brought this suit in, what, 2015. So, I mean, I can see why he's not doing habeas. Let me ask you this. If we think that the HECBAR bars the relief that we're talking about, that is to say, to correct the record of the sentence before, is there anything else in the complaint? I mean, is there something else that would survive? Is there some other claim? I mean, I read the complaint. It's kind of meandering and, you know, no slam on him. It's a pro se complaint. But is there anything else in the complaint? I would not identify another claim, Your Honor. But the — even if the court determines that the HEC does apply, that's still not a basis for affirming the district court's judgment. This court has held that a pro se plaintiff is special and must be given the opportunity to amend his complaint unless it is absolutely clear that he cannot overcome any defect upon amendment. So I'm asking you, what could he do? What's — what little nugget is there in the complaint that could survive or with amendment could survive? Mr. Bell could perhaps replete his case as a habeas corpus petition or some other route seeking to more directly attack his — I see no way that he can replete it properly as a habeas given the — given the date of the conviction and sentence. Whether or not the statute of limitations applies, Your Honor, is a factual question that is not before the court. But why doesn't he just file the habeas instead of the 1983 suit? He is not seeking the redress that is available through the habeas corpus petition, Your Honor. He is seeking to correct the records that are held. Counsel, I'm still — I'm still struggling to figure out if he's not asking for any redress to his sentence what the — what the harm is and why the Federal Court should spend this time trying to figure out whether there's a typographical error or a more substantive error in California's own records if he's not seeking — if he's not going to seek sentence reduction. And surely, counsel, we're not ignorant of the fact that if you obtain the relief that you're seeking here, that he is going to run into California courts and, if necessary, into Federal court to say, I'm being held illegally. And that sure feels like it should have been a heck bar, in which case he should be filing for habeas. Your Honor, Mr. Bell is seeking to address the inaccuracies in his criminal record. And I would just point out, multiple cases have held that a person can pursue 1983 relief against a state actor who maintains erroneous records about that individual. I would point the Court to the Hall v. Marshall decision at the Eastern District of New York, which is cited in our reply brief. There, the state's criminal records erroneously stated that the plaintiff was convicted of a murder. That was not true. And the plaintiff there was able to maintain a 1983 action to seek redress and get those records corrected. He is — the form of relief that Mr. Bell is seeking is fundamentally different than habeas relief. He is seeking to address the reputational and stigma-based harm that is inherent in anyone's inaccurate criminal record. Anyone would feel aggrieved by the state's saying, labeling them a convict of a serious felony, when that is not, in fact, the case. Counsel, yeah, I think we've — yeah, we've got your argument on that. We've taken quite a bit over. Thank you very much. We'll give you at least a minute on rebuttal, unless my colleagues have any more questions on that. And we'll hear from the government. Thank you, Your Honor. Oh, the other way. Good morning, Your Honors. Sarah Bratton, Deputy Attorney General, on behalf of Defendant Appelli. May it please the Court. As outlined in our briefing, there are several reasons why this Court should affirm the judgment below. However, given the Court's focus order, only the Heck argument will be addressed unless the Court has any other questions. Heck applies to bar Mr. Bell's lawsuit. Mr. Bell seeks to, quote, correct, end quote, his criminal history record in this Section 1983 civil lawsuit. He essentially claims that he was improperly sentenced 25 years ago under California's three-strikes law, and he seeks to invalidate one of the underlying felony strikes because he claims it's a misdemeanor. However, this is exactly the type of relief that he needs to seek in a writ of habeas corpus because success in the underlying action would necessarily imply the invalidity of the conviction and the duration of the sentence. Thus, Heck applies to bar his lawsuit. I want to address a couple points that Mr. Bell's counsel made in argument. First, it is true that the State does not — Mr. Bell was not required to plead administrative exhaustion under the PLRA, but that is not what — why the lawsuit was dismissed. And as far as the Heck bar, Mr. Bell argues that it would not necessarily imply the invalidity of the sentence or conviction because it's just — he's just seeking a correction. But the problem is the underlying criminal records are correct, and so the correction he's seeking is actually a change to his sentence. The minute order from his 1997 conviction in which he was sentenced under the three-strikes law is in the record at ER-69, and there he clearly was sentenced to two — Counsel, do we need to get into whether or not, you know, you say because it's actually correct? I think under Heck, the idea would be we don't need to get into whether it's correct or not. If it's true that if it was incorrect, it would necessarily imply that his sentence was incorrect, then he can't challenge that in a 1983 action. That's how I understand Heck. Is that correct? That's correct, Your Honor. I think the distinction that Mr. Bell's counsel was trying to make is, well, there wouldn't actually be — it wouldn't affect his sentence because we're just basically doing a paper — I think his distinction is that, like, I'm not asking for that relief in this case right now, so — but I'm — what is your answer to that? In other words, he's not necessarily saying that it wouldn't imply the invalidity, but I'm not saying that it — I'm not asking you to do it in this case, so Heck doesn't apply. I think that's his argument. Yeah, and I think that's correct, Your Honor. I think, essentially, if the court were to issue an order saying, yes, one of your underlying strikes is stricken, he wouldn't qualify for three-strike sentencing. And it's not — in his reply brief, he claims that he could potentially be resentenced, and so it wouldn't affect his sentence. But those prior strikes had to be proven at the time of the initial sentence, and so jeopardy attached at that point. The state can't simply — the district attorney's office can't simply resentence him on other felonies. And so if this court were to issue an order saying, yes, one of your underlying strikes is stricken, then, I mean, if CDCR were to get those records, they can't legally hold him anymore in custody. And so it — I'm not sure I quite understand their distinction. I think they're grappling, and it's clearly Heck barred. This is the quintessential case in which Heck applies. Should we send this back? I mean, the district court did not reach this. Should we send it back to ask the district court to address it in the first instance? That is not necessary, Your Honor, because this court can affirm on any basis supported by the record. And here, there's no — you know, if he was given any type of leave to amend or clarify, there's nothing that he could do that would make this a viable Section 1983 claim. His remedy was in habeas. And so there's no reason to send it back. This court can affirm on the record as it stands. And you didn't raise — you didn't — there's not an argument that you waived the Heck issue in the court below because you didn't — the government wasn't there in the court below. Is that right? This was dismissed. So your first opportunity to address this was your answering brief, which I believe it wasn't a long section on Heck, but I think you brought up Heck. Is that — am I recalling correctly? Yes, Your Honor. The lower court action was dismissed at screening so that none of the defendants had been served. This court issued an order after Mr. Bell's opening brief was filed asking the state to either respond as an amicus or for a party to file a brief and present oral argument. And that's when we entered the case. And so there was no opportunity prior to the answering brief for us to raise any arguments. If the court has no further questions, we would respectfully request that this court affirm the judgment below. Thank you. Thank you, counsel. We'll give you another minute for the appellants. Thank you, Your Honors. Tyler O'Brien for the plaintiff appellant, Mr. Danny Bell. Thank you for your time this morning, Your Honors. I'd like to quickly address just two points raised by the state. First, Mr. Bell's 1983 action does not seek to invalidate his conviction or his sentence. He seeks merely to correct the records held by the State Department of Defense. As formulated by the Wilkinson v. Dotson case, the relief he seeks would not necessarily imply the invalidity of his sentence or his conviction, so heck is not implicated and does not provide an alternative ground on which to affirm it. Counsel, that, I mean, this feels like a very, very technical argument. But let's suppose, let's play this out. Let's suppose that we had allowed you to go into a district court, said there's no heck bar. The district court plays this out, your client and your client prevails. According to the state, they would have an obligation to release your client, to make the correction in the records, and then on the basis of that, release your client. If they didn't do that, you're into court immediately to tell them that they are collaterally stopped by virtue of your 1983 suit from holding your client any further. I would have two points in response, Your Honor. First is that the state holds Mr. Bell, pursuant to his conviction and his sentence, merely correcting his criminal rap sheet would not be a basis on which to immediately release Mr. Bell from prison. Second. Why would that be any different than if Mr. Bell were trying to raise here a 1983 suit, that he didn't do it? They didn't do whatever the third strike was, that he wasn't there. It was a case of mistaken identity. He's got new witnesses, and he wants to come forward just to correct the record. That's a separate proceeding, Your Honor. There's one proceeding with certain procedural and substantive requirements to invalidate a sentence and conviction. There is a separate proceeding with its own procedural and substantive requirements to correct the state's rap sheet. That seems to be your argument, that as long as you're not asking for the ultimate relief, then there's no heck bar. But I mean, you can imagine that if that's the way that heck actually worked, then nobody would ever ask for the ultimate relief. They just always break it into two steps. They do what you're saying you're doing here, and then they would immediately follow up with that. So I don't think that's how heck works. I disagree, Your Honor. And I would ask that the court look at the Dotson standard and determine that Mr. Bell is not seeking to necessarily invalidate his sentence or conviction. Thank you, counsel. And do either of my colleagues have any more questions? No, I'd only like to thank you. You're a pro bono, so thank you. Thank you very much, and you did a great job in responding to a lot of questions from us. So thank you, counsel. Thank you to the government also.
judges: FLETCHER, BYBEE, VANDYKE